CASE NO. 11-5127
**SCHEDULED FOR ORAL ARGUMENT ON NOVEMBER 16, 2011**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PAUL F. KEOHANE,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia

**REPLY BRIEF OF PLAINTIFF-APPELLANT
PAUL F. KEOHANE**

David W. Foster
Armando Gomez
Alan J.J. Swirski
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Phone number:  (202) 371-7000
Email:  david.foster@skadden.com

*Counsel for Plaintiff-Appellant
Paul F. Keohane*

October 21, 2011

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ........................................................................1

I.    MR. KEOHANE'S SUIT IS TIMELY...............................3

    A.    Because the IRS Lawfully Could Have Collected in Excess of Fifteen Percent of Mr. Keohane's Social Security Benefits, He Had No Reason to Suspect that the IRS Was Acting Illegally When It Did So, and Thus Had No Reason to Investigate Any Potential Claim .......................4

    B.    Mr. Keohane's Suit Is Timely Under the Continuing Violations Doctrine ..................................................6

        1.    The Continuing Violations Doctrine Is Applicable to Claims Under Section 7433 ......................................6

        2.    The Facts of this Case Comply with the Requirements of the Continuing Violations Doctrine .........................................................7

    C.    Mr. Keohane's Suit Also Is Timely Under Treasury Regulation § 301.7433-1(g)(2)................................10

II.    THE STATUTE OF LIMITATIONS IN SECTION 7433(d)(3) IS NOT A CONDITION ON THE WAIVER OF THE UNITED STATES'S SOVEREIGN IMMUNITY OR A JURISDICTIONAL REQUIREMENT. ...........................................12

    A.    The United States's Jurisdictional Arguments Are Inconsistent with Recent Supreme Court Precedent ...............14

    B.    Recent Courts of Appeals Decisions Have Rejected Similar Arguments from the Government ..............................16

    C.    The Other Cases Cited by the United States Do Not Support Its Position................................................19

CONCLUSION ..................................................................22

i

CERTIFICATE OF COMPLIANCE......................................................................23

CERTIFICATE OF SERVICE............................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Action on Smoking & Health v. Civil Aeronautics Board*,
  724 F.2d 211 (D.C. Cir. 1984) ....................................................................17

\* *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)......................................3, 14, 17, 30

*Block v. North Dakota ex rel. Board of University & School Lands*,
  461 U.S. 273 (1983)....................................................................................15

*Bright v. United States*, 446 F. Supp. 2d 339 (E.D. Pa. 2006) .........................11-12

*Conforte v. United States*, 979 F.2d 1375 (9th Cir. 1992) ....................................20

*Dziura v. United States*, 168 F.3d 581 (1st Cir. 1999)...........................8, 11-12, 21

*FDIC v. Meyer*, 510 U.S. 471 (1994) ..................................................................18

*Gandy Nursery, Inc. v. United States*, 318 F.3d 631 (5th Cir. 2003)................20-21

\* *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011)..................14, 18

\* *Hoogerheide v. Internal Revenue Service*, 637 F.3d 634 (6th Cir. 2011)..............18

*In re New England Life Insurance Co. Sales Practices Litigation*,
  346 F.3d 218 (1st Cir. 2003) .........................................................................8

\* *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990)...........................15-17

\* *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) .................15-16

\* *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011) ......................................18, 20

*Kimball v. Internal Revenue Service*, 351 F. App'x 170 (9th Cir. 2009) ..............20

Authorities upon which we chiefly rely are marked with an asterisk.

\* *Kovacs v. United States*, 614 F.3d 666 (7th Cir. 2010) ...................................... 9-11

*Long v. United States*, 604 F. Supp. 2d 119 (D.D.C. 2009) ....................................9

*Macklin v. United States*, 300 F.3d 814 (7th Cir. 2002)...........................................9

\* *Menominee Indian Tribe of Wisconsin v. United States*,
614 F.3d 519 (D.C. Cir. 2010). ...................................................16-17, 19, 21

*Nesovic v. United States*, 71 F.3d 776 (9th Cir. 1995) .............................................9

*P & V Enterprises v. United States Army Corps of Engineers*,
516 F.3d 1021 (D.C. Cir. 2008) ...................................................................17

*Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010).......................................14

*Rollins Envtl Servs. (NJ) Inc. v. EPA*, 937 F.2d 649 (D.C. Cir. 1999) ...................13

\* *Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987) .........................................10

*Snyder v. United States*, 260 F. App'x 488 (3d Cir. 2008)................................9, 21

*United States v. Brockamp*, 519 U.S. 347 (1997) ............................................19-20

*United States v. Dalm*, 494 U.S. 596 (1990)....................................................19-20

*United States v. Mottaz*, 476 U.S. 834 (1986) .......................................................15

*Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009) ....................................................6

*Wallace v. United States*, No. 08-CV-156-B,
2009 WL 6317440 (D. Wyo. Apr. 8, 2009)................................................12

*Wallace v. United States*, 372 F. App'x 826 (10th Cir. 2010).......................8, 11-12

\* *Wisconsin Valley Improvement Co. v. United States*,
569 F.3d 331 (7th Cir. 2009)..................................................................17-18

\* *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979) .......................................10

**Statutes, Regulations, and Rules**

\*     26 C.F.R. § 301.7433-1 ............................................................... 1, 2, 4, 10

\*     26 U.S.C. § 6331 .......................................................................... 3-4, 7

      26 U.S.C. § 6511 .......................................................................... 20

      26 U.S.C. § 7432 .......................................................................... 21

\*     26 U.S.C. § 7433 ............................................................ 3, 6, 11-15, 18-22

      28 U.S.C. § 2401 .......................................................................... 17

      Federal Rule of Civil Procedure 12 ...................................................... 13

**Brief**

Brief for the United States, *John R. Sand & Gravel Co. v. United States*,
      552 U.S. 130 (No. 06-1164), 2007 WL 2825624 ........................................ 15

## INTRODUCTION

The issue in this appeal is whether Mr. Keohane complied with the statute of limitations in bringing his claim to challenge the IRS's disregard of the statutory limit on its authority.  The District Court held that the statute of limitations was jurisdictional and that it therefore could not apply the continuing violations doctrine, which it characterized as an equitable doctrine, to Mr. Keohane's claim.  JA-188.  In its brief, the United States agrees with Mr. Keohane that the District Court made at least two errors in its opinion:  First, the United States takes the position that "[t]he continuing violation doctrine is not equitable in nature."  Brief of the United States ("U.S. Br.") at 27.  Second, because the doctrine is not equitable, the United States believes "the doctrine may be invoked even when a statute of limitations is jurisdictional."  *Id.*

The United States's arguments that, notwithstanding the errors, the District Court's decision should be affirmed are unpersuasive.

*First*, Mr. Keohane's suit is timely.  Under both the continuing violations doctrine and Treasury Regulation § 301.7433-1(g)(2), Mr. Keohane filed his claim within two years of the date of its accrual.  The continuing violations doctrine applies because this case involves the infliction of continuing injury:  Every month for twenty-seven months, the United States's continuous levy inflicted a new, distinct, and palpable harm on Mr. Keohane.

1

The United States incorrectly contends that Mr. Keohane "believed that the law precluded a levy in excess of the 15% cap," and faults him for failing "to promptly contact the IRS (or the SSA, or both) to learn the details of the levy and assess his legal rights."  U.S. Br. at 18; *see also id.* at 32 (arguing that the injury was "definite and discoverable in June 2005, when he knew or should have known that the levy on his monthly benefits allegedly violated the 15% cap").  But the IRS's argument rests on a fundamental mischaracterization of the facts:  Mr. Keohane has never disputed the IRS's authority to levy in excess of 15 percent of his Social Security benefits, *as long as it did so pursuant to separate one-time levies*.  Mr. Keohane contends that the law precludes only a single *continuous* levy in excess of the 15 percent cap.

The United States's position apparently is that Mr. Keohane should have suspected that the government had chosen to collect his money illegally when it had a legal (but slightly more cumbersome) mechanism for doing so.  The United States identifies no support for this position, and does not address the cases Mr. Keohane cited holding that the government should be presumed to act lawfully. *See* Brief of Paul Keohane ("Keohane Br.") at 34.  Under Treasury Regulation § 301.7433-1(g)(2), Mr. Keohane did not have a "reasonable opportunity to discover all essential elements" of his claim until he was placed on notice that he should investigate the nature of the IRS levy.  That did not happen until sometime

after December 4, 2006, when he learned that the IRS was not instituting new one-time levies each month and was instead illegally relying on the continuing effect of a single levy.

  *Second*, the United States's characterization of the Internal Revenue Code section 7433 statute of limitations is also incorrect. That statute of limitations is neither a condition on the United States's waiver of sovereign immunity nor a jurisdictional prerequisite to suit. Under *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and its progeny, the section 7433(d)(3) statute of limitations is a mandatory, but not jurisdictional, requirement that Mr. Keohane must satisfy to obtain relief for the IRS's illegal action.

  This action is timely, and the District Court had jurisdiction to rule on it. The District Court's judgment should be reversed, and the case should be remanded for a determination on the merits of Mr. Keohane's claim that the 15 percent cap Congress enacted in section 6331(h) is not the nullity that the IRS believes it is.

## I. MR. KEOHANE'S SUIT IS TIMELY.

  Internal Revenue Code section 7433(d)(3) requires taxpayers seeking damages for wrongful IRS collection action to bring suit within two years of the date of accrual of their claim. Mr. Keohane's suit, filed on December 4, 2008, is timely under either of two theories. First, the facts of this case fall squarely within

the continuing violations doctrine, which holds that the claim accrued on the date of the last wrongful collection action, July 26, 2007. Second, Mr. Keohane brought suit within two years of his first reasonable opportunity to discover all essential elements of his claim, as required by Treasury Regulation § 301.7433-1(g)(2).

> **A.** **Because the IRS Lawfully Could Have Collected in Excess of Fifteen Percent of Mr. Keohane's Social Security Benefits, He Had No Reason to Suspect that the IRS Was Acting Illegally When It Did So, and Thus Had No Reason to Investigate Any Potential Claim**

The parties elected to enter into a stipulation, *see* JA-20-35, and to litigate this case on the basis of the stipulated facts.[1] Application of the relevant law to the agreed facts compels the following conclusions:

- There are two sources of IRS authority to levy on Social Security benefits. Under Code section 6331(a), it may institute a one-time levy that takes a large portion of an individual's Social Security benefits, or, under Code section 6331(h), it may exercise its authority to levy continuously on up to 15 percent of those benefits.

---

[1] The United States nevertheless casts aspersions on Mr. Keohane's recitation of the facts. *See, e.g.*, U.S. Br. at 34 (arguing that Mr. Keohane "vaguely, but conveniently" dates his discovery of the nature of the IRS levy to "sometime after December 4, 2006"). If the United States was dissatisfied in any way with the facts in the record, it was under no compulsion to stipulate to them.

- A reasonable taxpayer in Mr. Keohane's position, charged with knowledge of the law, would have known that he owed the government money, and that the IRS could collect that money by instituting one-time levies in excess of 15 percent of his Social Security benefits.

- None of the facts in the record suggests that a reasonable taxpayer would have had any basis for suspecting (much less any obligation to investigate) that the IRS was electing to ignore the 15 percent cap on its continuous levy authority in order to avoid the administrative burden of issuing a new one-time levy each month.

The government also cites undisputed facts in support of its arguments, but those facts (considered individually or collectively) do not permit this Court to infer that Mr. Keohane was placed on notice that he should investigate the nature of the IRS levy. According to the government, these three facts are determinative:

- First, Mr. Keohane knew that the IRS was levying on in excess of 15 percent of his Social Security benefits.

- Second, he knew that he had not filed his 1994 income tax return.

- Third, he did not contact the IRS or the SSA about the levy.

*See* U.S. Br. at 35-36. But neither the government nor the District Court explains why these facts would place a reasonable taxpayer aware of the relevant law on

5

notice that the IRS might be violating his rights, or why these facts would lead a reasonable person to investigate further.  On these facts, Mr. Keohane should have known that he owed the government money based on his failure to file a tax return, and he should have known that the government legally could levy on well in excess of 15 percent of his Social Security benefits to collect unpaid taxes by instituting one-time levies.  There is no reason why these facts should have led Mr. Keohane to suspect that the government had decided that the process of instituting one-time levies was too cumbersome and had instead decided to ignore the 15 percent cap on its continuous levy authority.

### B.     Mr. Keohane's Suit Is Timely Under the Continuing Violations Doctrine

#### 1.     The Continuing Violations Doctrine Is Applicable to Claims Under Section 7433

The District Court held that the continuing violations doctrine is an equitable doctrine that cannot be applied to jurisdictional statutes of limitations such as, it held, section 7433.  JA-187-188.  The United States agrees with Mr. Keohane that the District Court was incorrect.  The United States asserts that "[t]he continuing violation doctrine is not equitable in nature," and "the doctrine may be invoked even when a statute of limitations is jurisdictional."  U.S. Br. at 27.  Mr. Keohane recognizes that the United States cannot create jurisdiction merely by conceding this point of law.  *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1269

(2009) ("[A] party may not create jurisdiction by concession." (citation omitted)).

Nevertheless, for the reasons given in the parties' briefs, *see* Keohane Br. at 23-26;

U.S. Br. at 27, this Court should conclude that their position is correct and clarify

that the continuing violations doctrine can be invoked to determine the date of

accrual of a cause of action under both jurisdictional and nonjurisdictional statutes

of limitations.

> **2.     The Facts of this Case Comply with the Requirements of the Continuing Violations Doctrine**

The United States instituted a single levy with continuous effect that

imposed fresh harm on Mr. Keohane every month by taking a larger percentage of

his Social Security benefits than the law allowed.  The United States contends that

the continuing violation doctrine is inapplicable here for two reasons:  First, the

United States contends that this case involves "a single allegedly wrongful act that

happens to have continuing consequences."  U.S. Br. at 27.  Second, the United

States contends that from the date of the first levy, Mr. Keohane's injury was

"definite and discoverable, and nothing prevented plaintiff from coming forward to

seek redress."  *Id.* at 26.  Neither contention is correct.

This case does not involve a single wrongful act.  Section 6331(h) was

violated each time the United States acted pursuant to an unlawful continuous levy

to seize in excess of 15 percent of Mr. Keohane's benefits.  And each such

violation inflicted fresh and distinct harm on Mr. Keohane.  Each violation is linked together by the source of its authority—the IRS's illegal continuous levy.

Nor is this a case where nothing prevented Mr. Keohane from coming forward to seek redress for the wrong he was incurring.  As Mr. Keohane has explained, the impediment to redress was the fact that Mr. Keohane had no reason to suspect the IRS was acting illegally.  The United States does not address, much less refute, application of the principle that, absent strong evidence to the contrary, it is proper to presume that the government is acting lawfully.  Keohane Br. at 34.

None of the litany of cases that the IRS cites supports the conclusion that the continuing violation doctrine should not apply here.  In *Wallace v. United States*, 372 F. App'x 826, 830-31 (10th Cir. 2010), the taxpayer "knew of the government's allegedly illegal and excessive levy on her pension more than two years before she filed suit in October 2007."  Similarly, the taxpayer in *Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999), "knew (or, at least, should have known)" of the illegal nature of the IRS's levy.  By contrast, Mr. Keohane did not know of—or have any reason to suspect—the illegal nature of the levy in this case.  Similarly, in *In re New England Life Insurance  Co. Sales Practices Litigation*, 346 F.3d 218, 221 (1st Cir. 2003), the plaintiff had information that the defendant had "misrepresented" key facts and thus "had sufficient information to know that a more thorough investigation was warranted."  No information the IRS provided

8

here suggested to Mr. Keohane that he should investigate the IRS's collection action.

In *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010), the court refused to apply the continuing violations doctrine because "[e]ach of the IRS's attempts to collect taxes from Kovacs was a discrete act rather than a continuing violation or part of the original violation." Here, the monthly seizures of Mr. Keohane's benefits were all a result of, and thus "part of," the IRS's initial act of instituting a single illegal continuous levy.

The United States's reliance on cases involving liens rather than levies ignores the fundamental differences between liens and levies. *See* U.S. Br. at 27-28 (citing *Snyder v. United States*, 260 F. App'x 488, 493 (3d Cir. 2008); *Long v. United States*, 604 F. Supp. 2d 119, 122 (D.D.C. 2009); *Macklin v. United States*, 300 F.3d 814, 824 (7th Cir. 2002); and *Nesovic v. United States*, 71 F.3d 776 (9th Cir. 1995)). A lien protects the interests of the creditor filing it, but it does not operate to seize any property or funds. Therefore, once a lien is placed, it has had its entire intended effect. By contrast, the levy in this case continued each month to have the effect of inflicting fresh harm by seizing a different Social Security payment.

9

## C.   Mr. Keohane's Suit Also Is Timely Under Treasury Regulation § 301.7433-1(g)(2)

Under Treasury Regulation § 301.7433-1(g)(2), a cause of action

under section 7433 does not accrue until "the taxpayer has had a reasonable

opportunity to discover all essential elements of a possible cause of action."  The

phrase "a reasonable opportunity to discover" presupposes some trigger of a duty

to investigate.  *See Kovacs*, 614 F.3d at 674 (holding that "a statute of limitations

begins to run once a plaintiff has knowledge that would lead a reasonable person to

investigate the possibility that his legal rights had been infringed" (citation omitted)

(internal quotation marks omitted)).  As Mr. Keohane has explained above, none of

the facts in this case should have led him, or any other reasonable person, to

suspect that the IRS was infringing his legal rights by engaging in collection action

based on an illegal continuous levy when it had an undisputed right to proceed

based on a series of one-time levies.

This case therefore has much in common with *Rosales v. United

States*, 824 F.2d 799 (9th Cir. 1987), and  *Zeidler v. United States*, 601 F.2d 527

(10th Cir. 1979), which were cited in the legislative history of section 7433 as

examples of how the accrual of wrongful collection action claims should be

determined.  *See* Keohane Br. at 32-33.  The United States cannot dispute the

implication of this legislative history, so it instead claims that *Rosales* and *Zeidler*

are inapposite because they are "more than twenty year[s] old" and involve alleged

10

damages "to a fetus caused by an IUD" and "to a former Air Force employee caused by two lobotomy operations." U.S. Br. at 37. But the Conference Report (not Mr. Keohane) determined that these cases were relevant to claims under Internal Revenue Code section 7433 even though they do not involve unlawful collection action by the IRS. Invocation of these cases in the conference report accompanying adoption of section 7433 citation of those cases demonstrates that Congress expected some taxpayers would bring timely suits long after the allegedly tortious action occurred or began to occur.

The United States cites four cases that it erroneously believes compel a decision that this suit is untimely. U.S. Br. at 37-39. *Kovacs v. United States*, 614 F.3d 666 (7th Cir. 2010), actually supports Mr. Keohane. It holds that the claim accrues when "a plaintiff has knowledge that would lead a reasonable person to investigate the possibility that his legal rights had been infringed." *Id.* at 674 (citation omitted) (internal quotation marks omitted). As Mr. Keohane has explained repeatedly, a reasonable person in his position with knowledge of the law would have had no reason to investigate the possibility that his legal rights had been infringed.

Under the *Kovacs* standard quoted in the previous paragraph, *Bright v. United States*, 446 F. Supp. 2d 339, 344 (E.D. Pa. 2006), *Wallace v. United States*, 372 F. App'x 826 (10th Cir. 2010), and *Dziura v. United States*, 168 F.3d 581 (1st

11

Cir. 1999), likewise do not support the government's position.  In all of those cases, a reasonable taxpayer who understood the law would have investigated the possibility that the government was acting unlawfully.  *See Bright*, 446 F. Supp. 2d at 345 (holding that the taxpayer knew or should have known that the IRS failed to provide the required notice of intent to levy when the levy began without the taxpayer receiving notice), *Wallace v. United States*, No. 08-CV-156-B, 2009 WL 6317440, at *4 (D. Wyo. Apr. 8, 2009) (holding that the statute began to run because "it is clear that the Plaintiff knew of, and decided that the levy was illegal and impermissible even before it began"), *aff'd* 372 F. App'x 826 (10th Cir. 2010); *Dziura*, 168 F.3d at 583 (holding that taxpayers "*must* have known" of facts that would lead them to suspect the IRS was acting illegally).  By contrast, Mr. Keohane had no reason to suspect that the IRS was acting unlawfully, and he therefore did not have a reasonable opportunity to discover the elements of his claim until he learned the nature of the IRS levy sometime after December 4, 2006. He filed suit within two years of this date, and his claim is timely.

## II.    THE STATUTE OF LIMITATIONS IN SECTION 7433(d)(3) IS NOT A CONDITION ON THE WAIVER OF THE UNITED STATES'S SOVEREIGN IMMUNITY OR A JURISDICTIONAL REQUIREMENT.

Notwithstanding its agreement with Mr. Keohane that the continuing violations doctrine can be invoked under both jurisdictional and nonjurisdictional statutes, the United States opens and closes its brief with arguments that the section

7433(d)(3) statute of limitations is a condition on its waiver of sovereign immunity that deprived the District Court of subject matter jurisdiction in this case. *See* U.S. Br. at 19-26, 39-47. The United States's sovereign immunity and jurisdictional arguments are two sides of the same coin, and both are incorrect. Under recent Supreme Court precedent, section 7433(d)(3) is not a condition on the waiver of sovereign immunity, and noncompliance does not deprive federal courts of jurisdiction over the claim.[2]

---

[2]  Mr. Keohane asserted that the District Court had jurisdiction to hear his claim and that his claim is timely. *See* JA-7 ¶¶ 7, 9; JA-117-121. Indeed, the United States does not make an explicit waiver argument or cite any authority for waiver. *See Rollins Envtl Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1999) ("If Rollins had meant to claim lack of fair warning as a ground for setting aside the finding of violation, it was obligated to say precisely that in its opening brief and to include an argument, with citations to authorities in its favor."). For the record, the United States is incorrect that "[t]he Government squarely raised the jurisdictional character of the statute of limitations in its answer." U.S. Br. at 40. The United States cites paragraph 7 of its answer, but neither paragraph 7 of the Complaint nor the corresponding paragraph in the Answer made any reference whatsoever to the statute of limitations. *See* JA-7, JA-14. The only reference in the Answer to the statute of limitations was in paragraph 38, which the United States characterized as its "Second Affirmative Defense" and in which the United States contended that "[t]he complaint has also failed to state a claim upon which relief can be granted because this action was not timely commenced within the two-year period." The use of the term "affirmative defense" and the invocation of the Federal Rule of Civil Procedure 12(b)(6) language can only be read as raising a merits argument. (The United States knew how to raise jurisdictional defenses when it wanted to; Answer paragraph 37 claimed that the District Court lacked jurisdiction for an unrelated reason.) Finally, the United States's dispositive motion sought only summary judgment, not dismissal for lack of jurisdiction. *See* JA-37.

A.     **The United States's Jurisdictional Arguments Are Inconsistent with Recent Supreme Court Precedent**

The United States bookends its brief with the argument that the section 7433(d)(3) statute of limitations should be strictly construed against Mr. Keohane because it is a condition on the United States's waiver of sovereign immunity and thus that compliance with the statute of limitation is a jurisdictional prerequisite to suit.  These cases are inconsistent with *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and its progeny.  In this series of recent decisions, the Supreme Court has cautioned that "[c]ourts—including this Court—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations."  *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010).  Courts determining whether a statutory requirement affects the court's jurisdiction "look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'"  *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011).  Whether Congress has provided the required "clear indication" is "discerned by looking to the condition's text, context, and relevant historical treatment."  *Reed Elsevier*, 130 S. Ct. at 1246.  In this analysis, the Court has flatly rejected the proposition that "every deadline for seeking judicial review in civil litigation is jurisdictional."  *Henderson*, 131 S. Ct. at 1203.

The United States contends that the general rule announced in these cases for determining when a requirement is jurisdictional "did not speak to the

14

separate issue of sovereign immunity and a statute of limitations for filing suit in an Article III court." U.S. Br. at 42. It cites language from *United States v. Mottaz*, 476 U.S. 834 (1986), which stated generally that "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Id.* at 841 (alteration in original) (quoting *Block v. N. Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 287 (1983)). But the recent Supreme Court cases make clear that this statement in *Mottaz* and *Block* has been clarified.

   *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), like this case, involved the question whether the six-year statute of limitations for filing suit against the government in the Court of Federal Claims is jurisdictional. The United States argued in its brief that "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Brief for the United States at 23, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (No. 06-1164), 2007 WL 2825624. But the Supreme Court did not accept this argument and did not decide the case on this basis. Instead, after noting that *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), "found equitable tolling applicable to a statute of limitations governing employment discrimination claims against the Government," *John R. Sand*, 552 U.S. at 137, the Supreme Court ruled for the government on the ground that nearly

15

a century's worth of precedent had treated treating the specific statute at issue as jurisdictional. *Id.* (The statute at issue in *Irwin*, "while similar to the present statute in language, is unlike the present statute in the key respect that the Court had not previously provided a definitive interpretation."). In this case, the United States has not identified any Supreme Court precedent addressing section 7433(d)(3) that would bring this case under *John R. Sand*, and there is none.

The brief for the United States does not respond to any of Mr. Keohane's analysis of the text, structure, and history of section 7433. *See* Keohane Br. at 17-22. This inquiry makes clear that recent Supreme Court precedent compels the conclusion that section 7433(d)(3) is not a jurisdictional prerequisite to suit.

> **B.    Recent Courts of Appeals Decisions Have Rejected Similar Arguments from the Government**

Decisions from this Court and other Courts of Appeals support Mr. Keohane's interpretation of the recent Supreme Court precedents clarifying the jurisdictional inquiry. This Court explained to the government that "*Irwin v. Department of Veterans Affairs* established a 'general rule' that time limits for suing the government are presumptively subject to equitable tolling, 498 U.S. 89, 95 (1990), and therefore nonjurisdictional." *Menominee Indian Tribe of Wis. v.*

*United States*, 614 F.3d 519, 525 (D.C. Cir. 2010).[3]  Moreover, *Menominee* held

that "[f]iling deadlines, statutory or not, are generally nonjurisdictional."  *Id.* at

523.[4]

       The Seventh Circuit has recognized that recent Supreme Court cases

have clarified the meaning of *Mottaz* and *Block*:

> *Block v. North Dakota*, 461 U.S. 273, 292 (1983), the most recent
> decision that has used the word "jurisdiction" when referring to the
> effect of a statute of limitations for suit against the national
> government, appears to be yet another example of the tendency,
> discussed in *Kontrick* and *Eberhart*, to employ the word loosely; not
> every reference to "jurisdiction" in the Supreme Court's large corpus
> of decisions means "subject-matter jurisdiction" in the contemporary
> sense.
>
>     After *Irwin* and *Scarborough*, time limits affecting suits against
> the United States are not among the few true jurisdictional rules that
> the judiciary must raise, and resolve, on its own even if the litigants

---

[3]  *Menominee* thus squarely refutes the United States's contention that recent
Supreme Court precedent does not "distur[b] the long-settled principle that 'a
statutory time limitation is an integral condition of the sovereign's consent [and
that] [c]ompliance with that condition is a prerequisite to jurisdiction.'"  U.S. Br.
at 46 (second and third alteration in original) (quoting *Action on Smoking &
Health v. Civil Aeronautics Bd.*, 724 F.2d 211 (D.C. Cir. 1984)).

[4]  The United States cites *P & V Enterprises v. United States Army Corps of
Engineers*, 516 F.3d 1021, 1026 (D.C. Cir. 2008), for the proposition that the
statute of limitations in 28 U.S.C. § 2401(a) is a "jurisdictional condition
attached to the government's waiver of sovereign immunity."  (citation omitted).
The government neglects to quote the remainder of the paragraph, which states
that, in light of the parties' arguments, "the court has no occasion to address
potential implications of recent Supreme Court decisions" such as *Irwin*. *Id.* at
1027.  Mr. Keohane has expressly raised this issue in this case, and this Court
should therefore consider applying *Irwin*, *Arbaugh*, and their progeny here.

> agree that the suit is timely. Nor should a district court dismiss an untimely suit for want of jurisdiction, implying that plaintiff may present the claim to some other tribunal. The right disposition of a time-barred suit against the United States is dismissal with prejudice. The Department of Justice needs to abandon its rear-guard attempt to treat all conditions on waivers of sovereign immunity as "jurisdictional."

*Wis. Valley Improvement Co. v. United States*, 569 F.3d 331, 334 (7th Cir. 2009)

(Easterbrook, J.).

Finally, the Sixth Circuit, in an opinion by Judge Sutton, rejected precisely the position that the United States is taking here with respect to another requirement in section 7433(d):

> The United States responds that § 7433(d) is a term and condition of the United States' consent to suit and that the government's consent "define[s] th[e] court's jurisdiction to entertain the suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The United States consented to be sued, however, in § 7433(a), and § 7433(d)'s exhaustion requirement is not an express term or condition of that consent. Not every statutory limitation on a plaintiff's right to relief becomes jurisdictional in a suit against the United States. *See Henderson* [*ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011)].

*Hoogerheide v. Internal Revenue Serv.*, 637 F.3d 634, 638 (6th Cir. 2011) (first two alterations in original). *Hoogerheide* makes clear that the conditions on the United States's waiver of its sovereign immunity are in section 7433(a), not in section 7433(d). Both this Court in *Kim v. United States*, 632 F.3d 713, 718 (D.C. Cir. 2011), and the Sixth Circuit in *Hoogerheide* have concluded that the exhaustion requirement in section 7433(d)(1) is not jurisdictional. The United

States offers no persuasive reason why the statute of limitations in section

7433(d)(3) should be treated differently from the exhaustion and mitigation

requirements in the same subsection.

This Court should follow *Menominee* and join the Sixth and Seventh

Circuits in rejecting the position taken by the Department of Justice.  The section

7433(d)(3) statute of limitations is not a condition on the waiver of sovereign

immunity.

### C.    The Other Cases Cited by the United States Do Not Support Its Position

The United States cites six other cases in support of its argument that

section 7433(d)(3) is a condition on the waiver of its sovereign immunity that

creates a jurisdictional prerequisite to suit, but none of them supports the

government's case.  *See* U.S. Br. at 46-47.

The government is correct that *United States v. Dalm*, 494 U.S. 596,

608 (1990), and *United States v. Brockamp*, 519 U.S. 347 (1997), both treat a

statute of limitations in the Internal Revenue Code as jurisdictional and thus not

subject to tolling on equitable grounds.  But this case has little in common with

*Dalm* and *Brockamp* beyond the fact that it arises under the Internal Revenue Code.

*Menominee* explained that in the inquiry whether particular a statute of limitations

is jurisdictional, "focus on the regulatory scheme as a whole is misplaced.  The

*Brockamp* Court did not concern itself with the complexity of the Tax Code taken

as a whole, but the complexity of the time limitations found in § 6511." 614 F.3d at 530. A claim under section 7433 is different from the claims at issue in both *Dalm* and *Brockamp* in a fundamental way: Both *Dalm* and *Brockamp* arose when taxpayers sought a refund of taxes collected by the government, a situation in which the sovereign interest in protecting the fisc and the need for government certainty and closure are at their highest. By contrast, a claim under section 7433 does not contest liability for tax; it is a tort action for damages against the United States.[5] Moreover, the text, structure, and history of section 7433 strongly suggest that, unlike the statutes at issue in *Dalm* and *Brockamp*, it is not jurisdictional.

The Ninth Circuit's unpublished, non-precedential decision in *Kimball v. Internal Revenue Service*, 351 F. App'x 170, 171 (9th Cir. 2009), states, without analysis, that the two-year statute of limitations in section 7433(d)(3) is jurisdictional. In so doing, it relies on *Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992), which concludes, in conflict with this Court's decision in *Kim v. United States*, 632 F.3d 713, 718 (D.C. Cir. 2011), that the administrative exhaustion requirement in section 7433 is jurisdictional. The basis for the unpublished opinion in *Kimball* is thus not good law in this Circuit.

---

[5] All of the cases that the government cites in the second paragraph of footnote 15 on page 44 of its brief that conclude that section 7433 claims are not subject to equitable tolling predate *Arbaugh*. (*Gandy Nursery, Inc. v. United States*, 318 F.3d 631 (5th Cir. 2003), which the United States cites elsewhere in its brief, also predates *Arbaugh*.)

20

The Fifth Circuit's decision in *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636-37 (5th Cir. 2003), is likewise not determinative here. It relies on the general proposition that "if a waiver of sovereign immunity contains a limitations period, a plaintiff's failure to file his action within that period deprives the court of jurisdiction." *Id.* at 637. As Mr. Keohane has explained, that general proposition is inconsistent with this Court's holding in *Menominee* that filing deadlines in cases against the government are presumably nonjurisdictional.

The First Circuit's decision in *Dziura v. United States*, 168 F.3d 581 (1st Cir. 1999), does not even contain the word "jurisdiction," much less explicitly hold that section 7433(d)(3) is jurisdictional. Instead, the opinion refers to the "government's temporal *defense*," suggesting that the statute of limitations in section 7433(d)(3) is *not* jurisdictional. *See Dziura*, 168 F.3d at 584 n.4 (emphasis added). And the government closes its brief with a claim that *Snyder v. United States*, 260 F. App'x 488, 493 (3d Cir. 2008), held that the "two year limitations period in I.R.C. § 7432(d)(3) is jurisdictional." U.S. Br. at 47. The unpublished decision in *Snyder* held nothing of the sort. Instead, it affirmed the grant of *summary judgment* (not dismissal) to the United States, and in any event contained no analysis of the jurisdictional elements of either section 7433 or section 7432.

*Arbaugh* and its progeny compel the conclusion that section 7433(d)(3) is neither a condition on the waiver of sovereign immunity nor a jurisdictional

21

requirement.  This Court should therefore conclude that the statute of limitations in section 7433(d)(3) is nonjurisdictional.

## <u>CONCLUSION</u>

For the foregoing reasons and those in his opening brief, Mr. Keohane respectfully requests that this Court reverse the judgment of the District Court.


DATED: October 21, 2011             Respectfully submitted,

                                    By:  <u>/s/ David W. Foster</u>
                                         David W. Foster
                                         Armando Gomez
                                         Alan J.J. Swirski
                                         Skadden, Arps, Slate, Meagher & Flom
                                         LLP
                                         1440 New York Avenue, N.W.
                                         Washington, D.C.  20005
                                         Phone number:  (202) 371-7000
                                         Email:  david.foster@skadden.com

                                         *Counsel for Plaintiff-Appellant*
                                         *Paul F. Keohane*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the word limit set forth in Fed. R. App. P. 32(a)(7)(B)(ii) because, according to the word count feature of Microsoft Word 2003, the brief contains a total of 5,412 words, excluding the sections listed in Fed. R. App. P. Rule 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.

DATED:  October 21, 2011

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP

By: /s/ David W. Foster
David W. Foster
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Ave. N.W.
Washington, D.C.  20005
Telephone: (202) 371-7626
Facsimile: (202) 661-0586
david.foster@skadden.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing brief will be served through the

CM/ECF system and by first class mail on the following counsel of record for

Respondent-Appellee on October 21, 2011.

Judith A. Bradley
U.S. Department of Justice
Tax Division, Appellate Section
P. O. Box 502
Washington, D.C.  20044

DATED:  October 21, 2011

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP

By: <u>/s/ David W. Foster</u>
David W. Foster
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Ave. N.W.
Washington, D.C.  20005
Telephone: (202) 371-7626
Facsimile: (202) 661-0586
david.foster@skadden.com